IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY OLEA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-00498-PRW |
| | ) |
| RIVA SOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the Court are the Motion for Summary Judgment (Dkt. 40) filed by Defendant RIVA Solutions, Inc.; Plaintiff Johnny Olea's Response (Dkt. 53); and RIVA's Reply (Dkt. 62). For the reasons that follow, the Court **GRANTS** the Motion (Dkt. 40).

*Background*

This case arises from the allegedly discriminatory and retaliatory termination of an employee based on his disability. The following facts are undisputed. RIVA is a government contractor who provides mail delivery and distribution services to the Federal Aviation Administration at the Mike Monroney Aeronautical Center in Oklahoma City. The FAA required RIVA to sort and catalog all incoming mail and to scan deliverables with barcodes into the FAA's Package Tracking System. Olea worked at the site for RIVA as a Driver/Courier. In this role, he was responsible for sorting and delivering mail. Olea has suffered from hydrocephalus since he was a child.

From September 2021 to March 2022, Olea (1) was banned from the "CAMI Building"—"one of RIVA's largest delivery stops on the contract" for allegedly engaging in inappropriate interactions with a female employee working at that building; (2) arrived to work tardy on at least one occasion; and (3) (according to RIVA)[1] failed to sync his handheld scanning device (iPad) for twenty-three days, risking the loss of over 2,000 packages.

Around the same time—from December 2021 through March 2022—Olea experienced worsening pain in his groin and abdomen. The pain caused him to move slower and take longer to complete his mail routes. Olea testifies that he informed his immediate supervisors, Michael Lindsay and Robert Stavinoha, of the pain and opined that he thought he needed medical care.[2] In mid-March, he notified his supervisors as well as a Human Resources employee that he had a hernia and needed surgery and medical leave and that he would have lifting restrictions for several weeks following the surgery.

On April 8, 2022, RIVA terminated Olea's employment, citing his ban from the CAMI building, tardiness, and device-related failures. Olea argues that these reasons are pretextual, and that he was fired because of his disability and in retaliation for requesting accommodations for his disability. Consequently, Olea sued RIVA on June 6, 2023, alleging violations of the Americans with Disabilities Act, Oklahoma Anti-Discrimination

---

[1] Olea disputes this, testifying that "to [his] knowledge," he synched his iPad every day. Dep. of Johnny Olea (Dkt. 53-6), at 51. Regardless, RIVA contends that this is the primary reason that he was terminated. *See* RIVA Termination Letter (Dkt. 40-20).

[2] Dep. of Johnny Olea (Dkt. 53-7), at 20–24, 49–52.

Act, and Family and Medical Leave Act. (Dkt. 1). RIVA now moves for summary judgment.

### *Legal Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[4] Evidence that is "merely colorable" or "not significantly probative" will not defeat a motion for summary judgment.[5] A fact is material if it "might affect the outcome of the suit under the governing law."[6]

The moving party bears the initial burden of showing beyond a reasonable doubt the absence of a genuine issue of material fact.[7] Once the movant has met his initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] Courts may only consider admissible evidence in reviewing summary judgment, but the evidence need not be submitted "in a form that would be admissible at trial."[9] Rather, the proponent must show that the evidence is capable of

---

[3] Fed. R. Civ. P. 56(a).

[4] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted).

[5] *Id.* at 249–50 (citation omitted).

[6] *Id.* at 248.

[7] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (citation omitted).

[8] *Anderson*, 477 U.S. at 256.

[9] *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006)).

presentation in an admissible form.[10] Courts must view all facts and reasonable inferences in the light most favorable to the nonmovant.[11]

*Analysis*

I.      **The Court denies Olea leave to file a sur-reply.**

As a preliminary matter, Olea moves for leave to file a sur-reply. (Dkt. 63). He argues that RIVA raises several new arguments in its reply brief. While parties generally may not raise issues for the first time in a reply brief, such matters are properly considered when they are responsive to arguments raised in the response brief.[12] The Court finds that each "new argument" that Olea identifies is responsive to matters that he brought into play in his Response brief. The Court therefore **DENIES** the motion for leave to file a sur-reply.

II.     **Summary judgment is appropriate.**

The Court first notes that Olea did not respond to RIVA's arguments for summary judgment as to (1) his failure-to-accommodate claims under the ADA and Oklahoma Anti-Discrimination Act or (2) his FMLA claim. "Courts routinely deem an issue 'waived' when a party fails to respond to a movant's substantive argument."[13] Accordingly, Olea has conceded these arguments, and the Court finds that summary judgment as to these claims is appropriate. This leaves only his discrimination and retaliation claims.

---

[10] *Id.* (citations omitted).

[11] *Anderson*, 477 U.S. at 255.

[12] *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015).

[13] *Northcutt v. Fulton*, No. CIV-20-885-R, 2020 WL 7380967, at *2 (W.D. Okla. Dec. 15, 2020) (collecting cases); *see also Cigar Box, LLC v. Hous. Specialty Ins. Co.*, 685 F. Supp. 3d 1269, 1279 (W.D. Okla. 2023) (collecting cases).

      **A.**      **The *McDonnell Douglass* burden-shifting framework applies.**

The ADA prohibits both employment discrimination and discriminatory retaliation against qualified disabled employees, and the Oklahoma Anti-Discrimination Act forbids the same.[14] The Oklahoma ADA's protections "are 'co-extensive with the protections provided by federal law under the ADA.'"[15] Therefore, if Olea's ADA claims fail, his Oklahoma ADA discrimination claims fail as well.[16] Accordingly, the Court analyzes these claims together.

Because Olea has not presented direct evidence of discrimination and relies instead on indirect and circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies to both claims.[17] First, Olea must establish prima facie cases of discrimination and retaliation. The burden then shifts to RIVA to articulate a legitimate, nondiscriminatory reason for the termination, which shifts the burden back to Olea to show that Riva's justification is pretextual.[18] Because the Court concludes that Olea's claims fail

---

[14] *See George v. Cmty. Health Centers Inc.*, No. CV 21-00464-PRW, 2022 WL 697787, at *3, 7 (W.D. Okla. Mar. 8, 2022).

[15] *Hamilton v. Okla. City Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012) (quoting *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246–47 (N.D. Okla. 2010)).

[16] *Id.*; *see also Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 931 (10th Cir. 2024) (collecting cases); *George*, 2022 WL 697787, at *7 (citing *Tilghman v. Kirby*, 662 F. App'x 598, 603 (10th Cir. 2016)).

[17] *See Kierl-Allen v. Salvation Army Ark./Okla. Div.*, 2021 WL 4495909, at *3 (W.D. Okla. Sept. 30, 2021) (collecting cases) (involving circumstantial evidence of disability discrimination); *Herrman v. Salt Lake City Corp.*, 21 F.4th 666, 679 (10th Cir. 2021) (involving circumstantial evidence of retaliation).

[18] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (10th Cir. 1973).

at steps two and three, it assumes (without deciding) that he made a prima facie showing of each claim.

### B. RIVA articulated a legitimate reason for the termination.

The defendant's burden at the second step is "exceedingly light."[19] It need only provide facially legitimate and non-discriminatory reasons for the termination.[20] This burden "is one of production, not persuasion; it can involve no credibility assessment."[21] Here, RIVA produced ample evidence that Olea's ban from the CAMI Building, tardiness, and failure to synch his device for 23 consecutive days, are the reasons that he was fired.[22] RIVA has therefore articulated a legitimate, non-discriminatory reason for the termination. Thus, Olea must show that these reasons are pretextual.

### C. Olea has failed to show pretext.

To survive summary judgment, Olea "must present evidence to establish there is a genuine issue of material fact as to whether [RIVA's] articulated reason for the adverse employment action was pretextual."[23] A plaintiff may demonstrate pretext by showing that "the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision."[24]

---

[19] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (citation omitted).

[20] *Id.* (citation omitted).

[21] *Id.* (citation and internal quotation marks omitted).

[22] *See* Resp. (Dkt. 40), at 26.

[23] *DePaula*, 859 F.3d at 970.

[24] *Id.*

Olea doesn't claim that anyone with the authority to terminate him did so for pretextual reasons. Instead, he argues that the decision was made because of the discriminatory and retaliatory animus of Olea's supervisors, Lindsay and Stavinoha (who were not authorized to terminate his employment).[25] Olea therefore relies on a "cat's paw" theory of liability, "which allows a plaintiff to establish pretext even without evidence that the 'actual decisionmaker' possessed an unlawful motive."[26] An employer is liable under this theory "if a subordinate to the decisionmaker performs an act motivated by discriminatory [or retaliatory] animus that is intended by the subordinate to cause an adverse employment action, and that act is a proximate cause of the ultimate employment action."[27] Proximate cause is established where a plaintiff shows that the final decisionmaker fires an employee based on "uncritical reliance" on facts provided by a biased subordinate.[28] A plaintiff must show that the subordinate's involvement surpassed "mere influence or input in the decision making process."[29] Instead, he must show a fact issue exists as to "whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action."[30]

---

[25] Olea does not dispute that Lindsay and Stavinoha lacked the authority to terminate him. Resp. (Dkt. 53), at 1.

[26] *Singh v. Cordle*, 936 F.3d 1022, 1038 (10th Cir. 2019).

[27] *Id.* (cleaned up and emphasis removed).

[28] *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1294 (10th Cir. 2013) (internal quotation marks and brackets omitted).

[29] *E.E.O.C. v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 487 (10th Cir. 2006) (citation and internal quotation marks omitted).

[30] *Id.*

Assuming without deciding that Lindsay and Stavinoha acted with discriminatory or retaliatory intent, Olea has failed to show a triable issue as to whether their conduct proximately caused his termination. The portions of the record on which Olea relies show no more than "inputs" and "influence" on the decision-making process.[31] Viewed in the light most favorable to Olea, it merely evidences that his supervisors' report of the iPad incident travelled up the chain of command. But Olea has not shown that this report substituted the decision-making process of those with actual firing authority.

Olea argues that "[e]ven an investigation . . . would not break the causal chain between Stavinoha and Lindsay's animus and the termination decision."[32] But it is "well-established in the Tenth Circuit "that an employer can 'break the causal chain' between the biased subordinate's unlawful actions and the adverse employment action by

---

[31] *See* Resp. (Dkt. 53), at 23, 1, 7 (citing Def.'s Resp. to Int. No. 3 (Dkt. 53-1), at 3 (Jennifer Bonner, RIVA's Senior Vice President for Client Delivery, initially requested Olea's termination "based upon information received from" Stavinoha and Lindsay. Following that request, Bobby Frazitta (then Vice President of Human Resources and FSO) and Deborah Campbell (Senior Human Resources Business Partner) "reviewed [Olea's] performance and discussed his continued employment." Ultimately, CEO Naveen Krishnamurthy and COO Neelu Modali decided "to terminate [Olea's] employment[] after consult[ing] with RIVA's People & Culture Department."); Jennifer Bonner's Tr. (Dkt. 53-2), at 108–109 ("I base[d] my opinion [regarding Olea's termination] on . . . the chain of it coming up to me[,]" so Olea's termination "was caused at least in part" by information provided by Stavinoha and Lindsay.); Neelu Modali's Tr. (Dkt. 53-3), at 90 (The description of the iPad synching issue would have come either from Stavinoha or Lindsay.); Krishnamurthy's Tr. (Dkt. 53-4), at 78–79 (Krishnamurthy received the information regarding the iPad issue from Bonner.), 95–96 (Lindsay told Krishnamurthy that Olea had performance issues and was insubordinate)).

[32] Resp. (Dkt. 53), at 30.

independently investigating the allegations against the employee."[33] Indeed, "simply asking an employee for his or her version of events may defeat the inference that an employment decision was discriminatory, as such an inquiry demonstrates that 'the employer has taken care not to rely exclusively on the say-so of the biased subordinate.'"[34] Here, Olea's own journal entries reflect that Human Resources called him to hear his account of the iPad incident.[35] Although not "conclusive,"[36] taken with Olea's failure to show a genuine issue of material fact as to causation, the Court finds that summary judgment is warranted on his remaining claims.

## Conclusion

Accordingly, the Court **GRANTS** the Motion (Dkt. 40) and shall enter judgment contemporaneously.

**IT IS SO ORDERED** this 27th day of August 2025.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[33] *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 516 (10th Cir. 2015) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1253 (10th Cir.2006)).

[34] *Id.* at 516–17 (quoting *BCI Coca–Cola*, 450 F.3d at 488).

[35] Johnny Olea Notes (Dkt. 40-19).

[36] *Iweha v. Kansas*, 121 F.4th 1208, 1229 (10th Cir. 2024).